Case 1:19-cv-03209-CMA-NYW   Document 20-1   Filed 01/22/20   USDC Colorado   Page 1 of 19

# **EXHIBIT A**

LOWE'S COMPANIES

SEVERANCE PAY PLAN

As Amended and Restated Effective as of January 16, 2017

# TABLE OF CONTENTS

PAGE

**Section 1. Nature of the Plan.**......................................................................................**1**
**Section 2. Definitions.** ...................................................................................................**1**
**Section 3. Eligibility and Participation.** ......................................................................**4**
**Section 4. Eligibility for Severance Pay.** ....................................................................**4**
**Section 5. Calculation of Severance Pay Benefits**.....................................................**5**
**Section 6. Transition Assistance.** .................................................................................**6**
**Section 7. Employee Insurance and Welfare Benefits, Pension Service**...............**6**
**Section 8. Other Severance Benefits.**..........................................................................**6**
**Section 9. Repayment of Severance Pay Upon Reemployment**.............................**6**
**Section 10. Limitations on Severance Benefits.** ........................................................**6**
**Section 11. How Benefits are Paid.** .............................................................................**7**
**Section 12. Acts that May Cause Benefits Under the Plan to End.** .....................**7**
**Section 13. Plan Administration.** .................................................................................**8**
**Section 14. Claims Procedure.** .....................................................................................**8**
**Section 15. General Provisions.**..................................................................................**10**
**Section 16. ERISA Information About the Plan.** ..................................................**11**
**Statement of ERISA Rights**........................................................................................**12**

**Appendix A**

i

LOWE'S COMPANIES SEVERANCE PAY PLAN

Section 1.  Nature of the Plan.

The purpose of this Plan is to provide transitional income for eligible employees of Lowe's Companies, Inc. ("Lowe's" or the "Company"), or any participating Affiliated Company for a severance event described in this document.  The Plan (originally adopted effective as of September 1, 2010) is hereby amended and restated as of January 16, 2017.

The Plan is intended to constitute an employee welfare benefit plan under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, and shall be interpreted and administered accordingly. This document is intended to be both the plan document and summary plan description ("SPD") for the Plan, and reflects the terms of the Plan in effect as of January 16, 2017.  This Plan supersedes and replaces all prior written or unwritten severance pay plans, practices, or programs offered or established by the Employer, including, but not limited to, the Lowe's Companies Severance Pay Plan and the Lowe's Companies Store Locations Severance Pay Plan, effective as of the date hereof.  If the Plan is amended, copies of the amendment and an updated version of the SPD can be obtained from the Plan Administrator.

Section 2.  Definitions.

In this Plan, whenever the context so indicates, the singular or plural number shall be deemed to include the other.  Unless otherwise indicated, section references shall be to this Plan.  Where the following terms appear hereafter in this Plan, they shall have the meanings indicated below:

| | |
|---|---|
| Affiliated Company | Any corporation that is a member of a controlled group of corporations (as defined in Internal Revenue Code Section 414(b)) which includes Lowe's; any trade or business (whether or not incorporated) which is under common control (as defined in Internal Revenue Code Section 414(c)) with Lowe's; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Internal Revenue Code Section 414(m)) which includes Lowe's; any entity required to be aggregated with Lowe's pursuant to Treasury regulations under Internal Revenue Code Section 414(o); and any other or different entity designated by the Company. |
| Aviation | The Company's aviation operations, functions, employees and locations. |
| Base Pay | The employee's regular straight time pay for the last regularly scheduled workweek immediately preceding the date of the employee's Separation from Service.  Base Pay does not include overtime pay; shift premiums; bonuses; commissions; incentives; reimbursements or other expense allowances; fringe benefits (cash and noncash); moving or relocation expenses or allowances; cost-of-living adjustments or cost-of-living allowances (COLAs); market incentives; equity, stock |

| | |
|---|---|
| | or restricted stock grants or options or other long-term incentive compensation; and Company matching contributions to the Lowe's 401(k) Plan, Benefit Restoration Plan, or any other tax-qualified or non-tax-qualified retirement, savings or pension plan sponsored by Lowe's or welfare benefits. |
| Central Production Office or CPO ................................ | The Company's operations, facilities, functions and employees for the coordination of installed sales, but only to the extent those operations, facilities, functions and employees are outside the Company's store locations. |
| Company ........................................ | Lowe's Companies, Inc. (or its successor). |
| Customer Support Center Business Unit or CSC ............................................ | (i) The Company's corporate operations, functions, employees and locations in the United States of America, and (ii) all corporate employees based in corporate or supply chain locations in the United States of America but outside of the Company's headquarters in Mooresville and North Wilkesboro, North Carolina (*i.e.*, "in the field" or "field-based"). For purposes of this Plan, the Customer Support Center Business Unit includes Aviation, the Central Production Office, and Information Technology. The Customer Support Center Business Unit does not include the Distribution Center Business Unit or any store locations and employees. |
| Disability ........................................ | A medically determinable physical or mental impairment that can be expected to result in death or can be expected to last for a continuous period of not less than six months, where such impairment causes the employee to be unable to perform the duties of his or her position of employment or any substantially similar position of employment. |
| Distribution Center Business Unit or DC ....................... | The Company's supply chain operations, functions, employees and locations in the United States of America, including, but not limited to, Regional Distribution Centers, Flatbed Distribution Centers, Millwork Distribution Centers, and Specialty Distribution Centers. The Distribution Center Business Unit excludes the Customer Support Center Business Unit and all store locations and employees. |
| Eligible Employee ........................... | Any employee of an Employer who has met the applicable eligibility requirements of Section 3. |

2

| | |
|---|---|
| Employer............................................ | Lowe's Companies, Inc. and any Affiliated Company that participates in the Plan (as determined by the Company). |
| Information Technology ...................................... | The Company's information technology, information security, and information technology support operations, functions, employees and locations. |
| Minimum Scheduled Benefit.............................................. | The benefit described in Section 5(b) of this Plan. |
| Participant ........................................ | Any Eligible Employee who experiences a qualifying Separation from Service as described in Section 4. |
| Plan .................................................. | The Lowe's Companies Severance Pay Plan, as set forth herein, and as it may be amended from time to time. |
| Plan Administrator .......................... | The Company or any committee or person to whom the Company delegates the authority to administer the Plan. |
| Separation from Service................. | An employee's termination of employment as determined by the Employer in its sole discretion.  Notwithstanding the foregoing, for any payments to be made under this Plan to which Section 409A of the Internal Revenue Code apply, Separation from Service will have the same meaning as under Treasury Regulations § 1.409A-1(h). |
| Severance Pay ................................ | The benefit payable to an eligible Participant under Sections 5 and/or 8 of this Plan. |
| Successor Company ........................ | Any business entity acquiring all or a portion of the assets of a business operated by the Company, or any business entity designated by the Plan Administrator as such, for the purposes of this Plan. |
| Term of Service Benefit.............................................. | The benefit described in Section 5(a) of this Plan. |
| United States of America........................................... | The fifty (50) States and the District of Columbia. |
| Year of Service ............................... | A period of continuous eligible active employment of twelve (12) consecutive months.  An employee's Years of Service will be based on the employee's most recent period of continuous eligible employment (a prior period of employment will not be considered) and will be determined according to the Company's human resources records.  Any period of employment shorter than twelve full months shall be rounded up or down to the nearest whole year.  For |

>>example, eligible employment with an Employer for three years and eleven months will be counted as four Years of Service, and eligible employment with an Employer for three years and five months will be counted as three Years of Service.  Except as otherwise provided by Company (or, with the Company's consent, an Employer), Service as an ineligible employee is not counted.

Section 3.  Eligibility and Participation.

>(a) Except as otherwise provided by the Company (or, with the Company's consent, an Employer), the following employees are eligible to participate in the Plan:
>
>>(i) Employees of an Employer who are (A) classified as non-temporary, full-time, exempt employees in a position of Vice President or below and (B) whose pay grade or position is listed in Appendix A; and
>>
>>(ii) Employees of an Employer who are (A) classified as non-temporary, full-time, non-exempt employees and (B) assigned to work in the Customer Support Center Business Unit.
>
>(b) Notwithstanding the foregoing, the following employees are not eligible to participate in the Plan:
>
>>(i) Non-exempt CSC Employees assigned to work in a Contact Center, a Central Production Office, or any location outside of Mooresville or North Wilkesboro, North Carolina;
>>
>>(ii) Employees assigned to work regularly in any location outside the United States of America;
>>
>>(iii) Employees who are covered by a collective bargaining agreement;
>>
>>(iv) Employees classified as part-time;
>>
>>(v) Employees classified as temporary and/or seasonal;
>>
>>(vi) "Leased" employees and individuals classified by an Employer as non-employees, even if they could qualify as, or are subsequently determined to be, common law employees, and;
>>
>>(vii) Such other or different employee groups or categories as may be established by the Company (or, with the Company's consent, an Employer) in its sole discretion.

Section 4.  Eligibility for Severance Pay.

>(a) Except as otherwise provided by the Company (or, with the Company's consent, an Employer), any Eligible Employee who has a Separation from Service on or after January 16, 2017 will be eligible for Severance Pay if such separation is an involuntary

      Separation from Service by unilateral action of an Employer due to a position elimination, reduction in force, corporate reorganization or otherwise.

(b) Except as otherwise provided by the Company (or, with the Company's consent, an Employer), an Eligible Employee who experiences any of the following is not eligible for Severance Pay:

    (i) An involuntary Separation from Service for cause (as determined by the Company in its sole discretion) and/or for violating an Employer policy;

    (ii) A voluntary Separation from Service; and

    (iii) A Separation from Service due to death, Disability, retirement, or failure or inability to return to active status from a leave of absence.

(c) Notwithstanding paragraph (a) above, an Eligible Employee who experiences a Separation from Service will (except as otherwise provided by the Company) not be eligible for Severance Pay if any of the following applies at the time of the Separation from Service:

    (i) The employee is offered employment with an Employer or any Affiliated Company, a buyer, or any other Successor Company, whether or not the employee accepts the offer and whether or not the employment being offered is comparable;

    (ii) The employee accepts an engagement with an Employer or an Affiliated Company (A) as an independent contractor or leased employee or (B) to provide services to an Employer or an Affiliated Company pursuant to a contract for services on a substantially full time, non-temporary basis; or

    (iii) The employee is entitled to severance under another severance program of, or an arrangement or agreement with, the Company or an Affiliated Company, other than the Plan.

Section 5.  <u>Calculation of Severance Pay Benefits</u>.

    Except as otherwise provided by the Company (or, with the Company's consent, an Employer), a Participant's Severance Pay will be equal to the greater of the Participant's Term of Service Benefit and Minimum Scheduled Benefit, as described below:

(a) <u>Term of Service Benefit</u>. The Term of Service Benefit entitles a Participant to two weeks' Base Pay for every completed Year of Service since the Participant's most recent date of hire or rehire, up to a maximum of fifty-two (52) weeks' Base Pay.

(b) <u>Minimum Severance Pay Benefits</u>. A Participant's Minimum Scheduled Benefit is determined under the schedule set forth in Appendix A hereto. The Company may, in its sole discretion, vary from or change this schedule at any time.

Section 6.  Transition Assistance.

A Participant eligible to receive Severance Pay under this Plan who was employed in the Customer Support Center Business Unit (other than a Participant employed in a Contact Center, a Central Production Office, or any location outside of Mooresville or North Wilkesboro, North Carolina) will also be eligible to receive outplacement assistance through a provider of the Company's choosing under terms which are at the discretion of the Company.  Details regarding the outplacement assistance available to a Participant will be provided once the Participant becomes eligible for Severance Pay.

Section 7.  Employee Insurance and Welfare Benefits, Pension Service.

All employee insurance and welfare benefits and pension service (including eligibility to contribute salary deferrals to or to receive employee matching contributions under the Lowe's 401(k) Plan and Benefit Restoration Plan) will end on the date of the Participant's Separation from Service except as otherwise provided in those benefit plans. A Participant may be eligible for continuation of health care coverage at his or her own expense to the extent required under COBRA and other applicable law.

Section 8.  Other Severance Benefits.

Notwithstanding any other provision of this Plan to the contrary, the Company (or, with the Company's consent, an Employer) may, in its sole discretion, grant a Participant severance pay or other benefits in addition to or in lieu of the benefits otherwise provided under the Plan. The Plan Administrator (or its delegate) will communicate to the Participant in writing any such benefits.  A Participant is not eligible for any additional or other severance benefit not communicated in writing to the Participant by the Plan Administrator (or its delegate).

Section 9.  Repayment of Severance Pay Upon Reemployment

Except as otherwise provided by the Company (or, with the Company's consent, the Employer), if a Participant is subsequently reemployed by the Employer or another Affiliated Company, and at the time of such reemployment the number of weeks that have elapsed between Participant's Separation from Service date and reemployment date is less than the number of weeks of Severance Pay to which the Participant was entitled pursuant to Section 5, then the following will occur:

(a) If the Participant has yet received the Severance Pay, the Severance Pay will not be paid (and the Participant will have no further rights under the Plan); or

(b) If the Participant has already received the Severance Pay, the Participant will be required to repay the portion of the Severance Pay in excess of the number of weeks that have elapsed between the Participant's Separation from Service Date and reemployment date.

Section 10.  Limitations on Severance Benefits.

As a condition to receiving Severance Pay under this Plan, a Participant must sign and return to the Plan Administrator a full general release of all claims (the "Release") within the timeframe established by the Plan Administrator, and not revoke the Release during any revocation period required by applicable law (or otherwise permitted by the Plan Administrator).  The release will

6

contain such terms, conditions and restrictions as may be determined by the Company (or with the Company's consent, the Employer). Participants who do not wish to sign, or otherwise fail to sign and return timely to the Plan Administrator (before the end of the specified period), or who timely revoke the Release will not be entitled to Severance Pay or any other benefit under this Plan.

Benefits under this Plan may be reduced by the amount of any other severance benefits required to be paid by the Employer under, or any payment(s) made by an Employer in lieu of notice as may be required by, federal, state or local law.

Section 11. How Benefits are Paid.

Severance Pay will be paid in a single lump sum (less any required tax or other withholdings) to the Participant on the fourteenth business day following the date of the full execution and return to the Company of the Release in accordance with the requirements set forth in Section 10 (or as soon as administratively feasible thereafter). If the Participant subsequently revokes his or her acceptance of the Release (by, for instance, commencing a civil action against any released party on any of the release claims), the Participant agrees to forfeit any unpaid benefits under this Plan and to repay all benefits to the Employer, including, but not limited to, holding the value of benefits paid to the Participant in constructive trust for the benefit of the Employer.

Notwithstanding the foregoing, for any payment under the Plan that qualifies as "nonqualified deferred compensation" within the meaning of Internal Revenue Code Section 409A(d)(1), the following rules will apply:

(a) Payment will be made within ninety (90) days after the Participant's Separation from Service, provided, that if this period begins in one calendar year and ends in the subsequent calendar year, payment will not be made until the subsequent year.

(b) For any Participant who is a "specified employee" within the meaning of Internal Revenue Code Section 409A(a)(2)(B)(i) and the regulations thereunder, no such payments will be made prior to the date which is six (6) months after such Participant's Separation from Service.

Section 12. Acts that May Cause Benefits Under the Plan to End.

As a condition to a Participant's receipt and retention of any of the benefits under this Plan, the Participant must return all Employer property that is in the Participant's possession, custody or control. This "property" includes all materials, documents, plans, records, data, or papers or any copies of such documents which in any way relate to the Employer's affairs. This property further includes all tools, telephones, computers, vehicles, credit cards, manuals and any money due to the Employer.

As a condition to the receipt and retention of any of the benefits under this Plan, the Participant agrees not to disclose, reveal or release to any third party any technical information, trade secrets or other proprietary information of the Employer. The Participant further agrees not to solicit business from any of the Employer's customers in competition with the Employer. If the Plan Administrator determines the Participant is engaging in or has engaged in activities that violate these provisions, it may, in its discretion, terminate the severance benefits the Participant is eligible to receive under the Plan and may initiate proceedings to recover any payment the Participant received.

Section 13.  Plan Administration.

The Plan Administrator shall have complete and exclusive discretion and authority to administer all aspects of this the Plan.  The Plan Administrator's authority shall include full discretionary authority to construe and interpret the provisions of the Plan and to determine all questions arising in connection with the administration of the Plan, including, but not limited to, questions regarding eligibility for or the level of benefits payable under the Plan.  The Plan Administrator may delegate to any other persons or organizations any of the Plan Administrator's rights, powers, duties and responsibilities with respect to the operation and administration of the Plan that are permitted to be so delegated under ERISA.

Section 14.  Claims Procedure.

(a) Submitting a Claim.  If a Participant has any complaint or claim concerning any aspect of the operation or administration of the Plan, he or she must submit the claim to the Plan Administrator or another person designated by the Plan Administrator.  Claims must be submitted in writing (or by such other means as may be permitted by the Plan Administrator) and should include a statement of the relief requested and the reasons the relief should be granted.  Claims must be submitted within one (1) year of a claimant's Separation from Service.  Claimants should include any documentary or other evidence which they believe support the claim.

(b) Notification of Denial.  If a claim is denied in whole or in part, the Plan Administrator (or other decision-maker) will send written notice of the decision within ninety (90) days of the date the claim was received.  This 90-day period may be extended for an additional ninety (90) days (or other period permitted by ERISA) by written notice from the Plan Administrator (or other decision-maker). If such an extension is necessary, the claimant will be notified prior to the expiration of the initial determination period of the extension, the reasons for the extension and a date by which the Plan Administrator (or other decision-maker) expects to make a decision. Except as otherwise required by ERISA or other applicable law, if the claim is denied in whole or in part, the Plan Administrator (or other decision-maker) shall provide a written notice to the claimant setting for the following:

(i) The specific reason or reasons for denial;

(ii) Reference to specific Plan provisions on which the denial is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) An explanation of the Plan's review procedures and time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under ERISA following an adverse benefit determination on review; and

(v) Any other or different information required by ERISA or other applicable law or regulations.

If there is no response to the claim within the 90-day period(s), the claim will be deemed denied and the claimant may request a review of the denial.

(c) <u>Claims Review Process</u>.  If a claim is denied in whole or in part or if the claimant receives no response to the claim, the claimant may appeal the denial to the Plan Administrator (or other person designated by the Plan Administrator) in writing within sixty (60) days of receipt of written notice of denial or sixty (60) days of the expiration of the 90-day response period without a response.  In pursuing the appeal, the claimant should submit all evidence and arguments in favor of the claim in writing. To the extent required by law, the claimant (or his or her authorized representative) shall be permitted to (i) submit written comments, documents, records, and other information relating to the claim and (ii) receive, upon request and free of charge, copies of, and reasonable access to, all documents, records, and other Plan information relevant to the claim.  The review will take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial denial. If the Plan Administrator (or other decision-maker) deems it appropriate, a hearing on the claim may be held.

(d) <u>Decision on Review</u>.  Except as otherwise required by ERISA, the Plan Administrator (or other decision-maker) will make a decision on review within sixty (60) days of receipt of the request for review, unless special circumstances require an extension of time. If such an extension is required, a decision will be rendered as soon as possible, but not later than 120 days after receipt of the request for review, and the Plan Administrator (or other decision-maker) will furnish written notice of the extension to the claimant before the end of the original 60-day period stating the reasons for the extension and a date by when the Plan Administrator (or other decision-maker) expects to make a decision.  The decision on review will be made in writing and will include:

    (i) The specific reason or reasons for the decision;

    (ii) Specific references to Plan provisions on which the decision is based;

    (iii) A statement that the claimant is entitled to receive, upon request and free of charge, copies of, and reasonable access to, all documents, records and other information relevant to the claim;

    (iv) A statement describing any voluntary appeal procedures offered by the Plan and the claimant's right to receive information about such procedures;

    (v) A statement of the claimant's right to bring an action under Section 502(a) of ERISA; and

    (vi) Any other or different information required by ERISA or other law or regulations.

(e) <u>Finality of Interpretations, Determinations and Decisions</u>.  All interpretations, determinations and decisions of the Plan Administrator or other decision-maker with respect to any Plan claim shall be final and conclusive and binding on all interested parties. No legal action to recover benefits under this Plan may be commenced without

prior exhaustion of this administrative claim and review procedure, and no legal action to recover benefits under this Plan may be commenced later than two years from the date of the decision on review (or if the claim is deemed denied for any reason, two years from the date that the deemed denial occurred).

Section 15. <u>General Provisions</u>.

(a) <u>No Assignment</u>. A Participant cannot assign, pledge, or otherwise alienate any rights or benefits payable under the Plan prior to receipt of those benefits. The Plan will not be liable for or subject to the debts, garnishments or other obligations of any Participant eligible for benefits under this Plan.

(b) <u>No Contract of Employment</u>. Nothing in the Plan shall give any employee the right to continued employment, nor shall the Plan prevent any Employer from terminating the employment of any employee at any time for any reason.

(c) <u>Plan Unfunded</u>. The Plan is intended to be unfunded and all Severance Pay shall be paid from the general assets of the responsible Employer. Any person who is entitled to Severance Pay shall not have any claim against specific assets of the Company or other Employer and shall be only a general creditor of the responsible Employer.

(d) <u>Forfeitability</u>. Any right to Severance Pay or other benefits under this Plan are forfeitable at all times. The Plan may be amended at any time as provided in subsection (e) to change or eliminate such benefits.

(e) <u>Plan Amendment or Termination</u>. The Company reserves the right to amend or terminate the Plan at any time, in whole or in part, in any manner and for any reason. Termination or amendment may be prospective or retroactive, as deemed appropriate by the Company. Any change or termination may apply to all or designated classes of employees, including former employees. Upon termination of the Plan, the Employers shall have no further liability hereunder, and (except as otherwise provided by the Company) all Plan benefits (including any amounts payable to employees who separated from service before the date of Plan termination) shall cease.

(f) <u>Governing Law</u>. The provisions of this Plan shall be construed and interpreted in accordance with the laws of the State of North Carolina, except to the extent such laws are superseded by ERISA. To the extent applicable, the Plan is intended to comply with the distribution and other applicable requirements of Section 409A of the Internal Revenue Code ("Section 409A") and shall be interpreted and applied consistently with the requirements of Section 409A, as applicable.

(g) <u>Taxation of Benefits</u>. The Employers make no representations concerning tax treatment of Severance Pay under federal, state or local laws. The applicable Employer will withhold any income or other taxes it determines is required by law to withhold, including FICA taxes. Participants are solely responsible and liable for the satisfaction of any taxes that may arise with respect to Severance Pay or other Plan benefits (including any taxes under Section 409A), except as otherwise specifically provided in the Release or required by law. Neither the Employer nor any of its employees, officers, directors or service providers shall have any obligation whatsoever to pay such taxes, to prevent

Participants from incurring them, or to mitigate or protect Participants from any such tax liabilities.

(h) <u>Compliance with Code Section 409A</u>. Although the Company intends and expects that the Plan will be exempt from Section 409A, neither the Employers nor their employees, directors or any agents shall have any obligation to hold a Participant harmless from any or all such taxes. The Company shall have complete discretion to interpret and construe this Plan and associated documents in any manner that establishes an exemption from, or otherwise conforms them to, the requirements of Section 409A.  Notwithstanding anything in the Plan to the contrary, if any amount that becomes due under the Plan on account of an employee's termination of employment constitutes "nonqualified deferred compensation" within the meaning of Section 409A, payment of such amount shall not commence until the employee incurs a "separation from service" within the meaning of Treas. Reg. §1.409A-1(h) and such amount shall otherwise be paid in accordance with the requirements of Section 409A.

Section 16.  <u>ERISA Information About the Plan</u>.

| | |
|---|---|
| Name of Plan | The full name of the Plan is the Lowe's Companies Severance Pay Plan.  The Plan is a component of the Lowe's Welfare Plan. |
| Plan Identification No | 511 |
| Plan Sponsor | Lowe's Companies, Inc.<br>1000 Lowe's Boulevard<br>Mooresville, NC 28117 |
| Employer Identification Number (EIN) for Plan Sponsor | 56-0578072 |
| Type of Plan | The Plan is an employee welfare benefit plan as defined in ERISA Section 3(1) and a severance pay plan as defined in 29 C.F.R. § 2510.3-2(b). |
| Type of Administration | Self-administration by plan sponsor. |
| Funding | The Plan is funded solely by the plan sponsor and its Affiliated Companies.  Benefits under the Plan are paid as needed for the general assets of the plan sponsor and its Affiliated Companies. |
| Claims Administration | Lowe's Companies, Inc.<br>Attn: Vice President, Total Rewards<br>1000 Lowe's Boulevard<br>Mooresville, NC 28117<br>Telephone (704) 758-7000 |

| | |
|---|---|
| Plan Administrator ......................... | Lowe's Companies, Inc.<br>Attn: Vice President, Total Rewards<br>1000 Lowe's Boulevard<br>Mooresville, NC 28117<br>Telephone (704) 758-7000 |
| Agent for Service of Process .......................................... | General Counsel<br>Lowe's Companies, Inc.<br>1000 Lowe's Boulevard<br>Mooresville, NC 28117 |
| Plan Year....................................... | The Plan Year is the calendar year. |

## Statement of ERISA Rights

**The following statement is required by federal law and regulation.**

All participants in the Lowe's Companies Severance Pay Plan are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA provides that all plan participants shall be entitled to:

**Receive Information about the Plan and Benefits**

Specifically, ERISA entitles all plan participants to:

Examine, without charge, at the plan administrator's office and at other specified locations, such as work sites, all documents governing the plan, including insurance contracts and a copy of the latest annual report (Form 5500 Series) filed by the plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

Obtain, upon written request to the plan administrator, copies of documents governing the operation of the plan, including insurance contracts and copies of the latest annual report (Form 5500 Series) and updated summary plan description. The administrator may make a reasonable charge for the copies.

Receive a summary of the plan's annual financial report. The plan administrator is required by law to furnish each participant with a copy of this summary annual report.

**Prudent Actions by Plan Fiduciaries**

In addition to creating rights for plan participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plans. The people who operate the plan, called fiduciaries of the plans, have a duty to do so prudently and in the interest of plan participants and beneficiaries. No one, including your employer, or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a welfare benefit or exercising your rights under ERISA.

**Enforce Your Rights**

If your claim for a welfare benefit is denied or ignored, in whole or in part, you have a right to know why this was done and have the right to obtain copies of documents relating to the decision, without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request a copy of plan documents or the latest annual report from the plan and do not receive them within 30 days, you may file suit in a federal court. In such a case, the court may require the plan administrator to provide the materials and pay you up to $110 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the administrator. If you have a claim for benefits that is denied or ignored, in whole or in part, you may file suit in a state or federal court. In addition, if you disagree with the plan's decision or lack thereof concerning the qualified status of a domestic relations order or a medical child support order, you may file suit in federal court. If it should happen that plan fiduciaries misuse the plans money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or you may file suit in a federal court. The court will decide who should pay court costs and legal fees. If you are successful the court may order the person you have sued to pay these costs and fees. If you lose, the court may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

**Assistance with Your Questions**

If you have any questions about your plan, you should contact the plan administrator. If you have any questions about this statement or about your rights under ERISA, or if you need assistance in obtaining documents from the plan administrator, you should contact the nearest office of the Employee Benefits Security Administration, U.S. Department of Labor, listed in your telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, U.S. Department of Labor, 200 Constitution Avenue N.W., Washington, D.C. 20210.

You may also obtain certain publications about your rights and responsibilities under ERISA by calling the publications hotline of the Employee Benefits Security Administration.

Executed effective January 16, 2017, this 16th day of January, 2017.

LOWE'S COMPANIES, INC.

_____
Name: Matt Eurey
Title: VP, Total Rewards

## APPENDIX A

PAY GRADES/POSITIONS FOR CALCULATION OF MINIMUM SCHEDULED BENEFIT

| Minimum Scheduled Benefit | Position levels | Applicable Pay Grades/Positions | |
|---|---|---|---|
| **26 weeks' Base Pay** | Vice President and equivalent positions | Corporate Grades | E12, E13, E14 |
| **12 weeks' Base Pay** | Director and equivalent positions | Corporate Grades | E09, E10, E11 |
| | | Innovation Lab Grades | H11 |
| | | Aviation Grades | T11, T12, T13, T14 |
| **8 weeks' Base Pay** | Manager/Store Manager and equivalent positions | DC Grades | D07, D08 |
| | | Corporate Grades | E07, E08 |
| | | Innovation Lab Grades | H09, H10 |
| | | IT Grades | M07, M08, M09, M10 |
| | | Aviation Grades | T09, T10 |
| | | The following store positions: Store Manager | |
| **6 weeks' Base Pay** | All other exempt and non-exempt Eligible Employees | DC Grades | D03, D04, D05, D06 |
| | | Corp Grades | E04, E05, E06 |
| | | Innovation Lab | H08 |
| | | CPO/Contact Center Grades | I12, I13, I14, Q12, Q13, Q14, W12, W13, W14 |
| | | IT Grades | M03, M04, M05, M06 |
| | | Aviation Grades | T05 |
| | | The following store positions: Sales Manager Assistant Store Manager Market ORC Manager SR. Manager LP & Safety HR Manager Product Service Supervisor | |

1

# AMENDMENT NUMBER ONE TO THE
# LOWE'S COMPANIES SEVERANCE PAY PLAN

This Amendment No. 1 to the Lowe's Companies Severance Pay Plan (the "Plan"), as amended and restated effective January 16, 2017, is hereby adopted by Lowe's Companies, Inc. (the "Company").

## WITNESSETH:

**WHEREAS,** the Company maintains the Plan; and

**WHEREAS,** under Section 15(e) of the Plan, the Company has the authority to amend the Plan in whole or in part at any time; and

**WHEREAS,** the Company desires to amend the Plan to expand the eligibility provisions to add an additional group of employees and make other related changes;

**NOW, THEREFORE,** the Company hereby amends the Plan, effective as of August 1, 2017, as follows:

1. Section 3 of the Plan is amended by adding the following new subsection (c) at the end thereof:

   "(c) To the extent provided by the Company (or, with the Company's consent, an Employer), the following employees are also eligible to participate in the Plan: Field employees working at a DC, Contact Center or store location who (i) are classified as non-temporary, full-time, non-exempt employees and (ii) are not otherwise eligible to participate in the Plan."

2. Section 5(a) of the Plan is amended in its entirety to read as follows:

   "(a) Term of Service Benefit. The Term of Service Benefit entitles a Participant to two weeks' Base Pay for every completed Year of Service since the Participant's most recent date of hire or rehire, up to a maximum of fifty-two (52) weeks' Base Pay; provided, that for a Participant who qualifies as an Eligible Employee under Section 3(c) only, the Term of Service Benefit entitles a Participant to 1 week of Base Pay for every completed Year of Service since Participant's most recent date of hire or rehire, up to a maximum of eighteen (18) weeks.

1

3. Appendix A of the Plan is amended by the addition of the following minimum scheduled benefit at the end thereof:

| **4 weeks' Base Pay** | All employees who qualify as Eligible Employees under Section 3(c) only | Store Grades: 001, 002, 003, 004, 005, 006, S07, S08, S09<br>DC Grades: 001, 002, 003, 004, 005, 009, 010, CD0, CD1, CD2, CD3, CD8<br>Contact Center Grades: I05, I06, I07, I08, I09, I10, I11, Q05, Q06, Q07, Q08, Q09, Q10, Q11, W05, W06, W07, W08, W09, W10, W11 |

4. The Plan, as amended herein, is hereby ratified and affirmed in all other respects.

IN WITNESS WHEREOF, the Company has adopted this Amendment No. 1 to the Plan as of the effective date set forth above.

LOWE'S COMPANIES, INC.

By: *[signature]*
Mark Imhoff
Vice President – Human Resources
Lowe's Companies, Inc.

Date: 8/17/17